## John C. Hemmer, Appellant, v. New Illinois Athletic Club of Chicago, Appellee.

### Gen. No. 16,362.

1. CONTRACTS—*publication of magazine.* Where a contract provided that subscriptions to a certain magazine published for defendant club by plaintiff should be collected from such members as elected to subscribe and should be the property of the club; and that the club should furnish the publisher with a list of the members four times a year for a subscription list, to each of whom each current issue of the magazine should be sent; and a modifying contract provided that the publisher should receive the entire sum realized from subscriptions, and that subscription accounts were to be included in the monthly accounts sent to the members, but that the club did not guarantee the collection of the subscriptions; under the terms of such contracts the publisher was bound to send the magazine to every member whose name appeared on the list furnished by the club, whether such members subscribed or not; and the reasonable construction thereof is that the club agreed to send bills to its members on the subscription list which where no members elected to subscribe was, as between the parties, the list of members furnished to the publisher by the club.

2. EVIDENCE—*when question whether proper for jury depends on foundation laid.* On action by a publisher against a club for breach of contract to send bills to its members for subscriptions to the plaintiff's magazine whether proper data for the consideration of the jury in fixing the damages is furnished by evidence of the custom of other clubs, and also evidence of the measure of damages of the amount collected by the club for subscriptions for a magazine published by it and sent to its members, depends on the foundation laid therefor.

Appeal from the Municipal Court of Chicago; the Hon. JOHN C. SCOVEL, Judge, presiding. Heard in this court at the March term, 1910. Reversed and remanded. Opinion filed July 8, 1912.

CHURCH & McMURDY, for appellant.

LAWRENCE & FOLSOM, for appellee.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

The appellant brought suit to recover damages from

the appellee for breach of contract. At the close of the case for the plaintiff, the appellant here, the court held that no evidence had been introduced tending to prove a breach of the contract, and instructed the jury to find for the defendant, here the appellee, and entered a judgment on the verdict returned as instructed.

On June 1, 1906, the parties entered into a written contract, whereby the appellant agreed to publish for five years, at his own expense, a monthly magazine to "contain reading matter of interest to the members of the New Illinois Athletic Club of Chicago," to be called "The Illinois." By the terms of the contract the appellee's president has the right "to pass upon the reading matter, advertising, illustrations, and upon the make-up and appearance of the said magazines, and if, in his judgment, he deems it best, shall have the right to reject any of the reading matter, advertising, illustrations or change the make-up or appearance of the said magazine, and this right is to be exercised for each and every issue of this magazine during the life of this contract." The subscription price was one dollar per year, "which subscription shall be collected by the party of the first part from such members of the New Illinois Athletic Club of Chicago as elect to subscribe, which subscriptions shall belong to and be the property of the party of the first part, the New Illinois Athletic Club of Chicago, and the party of the first part shall four times a year furnish the party of the second part with a list of its members, to each and all of whom each and every month the party of the second part will mail the current number of said magazine for that month." The contract also stated: "The consideration of this contract shall be the party of the first part" (appellee) "permitting, allowing and authorizing the said party of the second part" (appellant) "to publish the magazine hereinbefore mentioned, called 'The Illinois,' adopting it as its official club paper and furnishing

the party of the second part with a list of its members for a subscription list, and the consideration from the the said party of the second part to the said party of the first part shall be the publishing of the said magazine according to the terms and conditions hereinbefore mentioned.''

On May 23, 1907, the parties entered into what they termed a ''Modifying Contract,'' wherein it was provided that appellant ''shall receive the entire sum realized from subscriptions for the magazine called 'The Illinois,' received from the members of the New Illinois Athletic Club of Chicago.

''Third.  The party of the first part'' (appellee) ''agrees to include said subscription accounts in its monthly accounts sent to its members on or about the first day of August, A. D. 1907, and agrees to turn over to the party of the second part'' (appellant) ''all of the amount so received, but it is expressly agreed that the party of the first part does not guarantee the collection of any or all the said subscriptions.''  In the consideration of the case it is not necessary to recite the other parts of the said contracts.

The appellant published and sent a copy of said magazine to appellee's members up to and including May, 1908, and claimed damages because of the failure of the appellee to include subscription accounts for said magazine in its monthly accounts sent to its members about August 1, 1907, as agreed by the terms of said ''Modifying Contract.''  The appellee argued that the said contract required it to send subscription accounts to those only ''as elect to subscribe,'' and as none of the members had elected to subscribe, there were no subscribers, and therefore no obligation rested upon it under said contracts to send subscription accounts to its members.  The trial court agreed with the appellee in its construction of the contracts, and upon that theory instructed the jury.

As provided by the contract, the magazine was to

be made up under the direction of the appellee's president, and was to contain reading matter of interest to appellee's members and be its official publication. The appellee was to furnish appellant at certain times a list of its members "for a subscription list," and appellant was obligated to send to each member on said list each issue of the said magazine during the life of said contracts. It is clear that under the first contract the appellee was to collect and retain such amounts as it could from its members who elected to subscribe; and it seemed to be recognized that it could not enforce collection from its members except as to those who did in fact subscribe for the magazine. It is also evident under the terms of the said contracts, even though members did not elect to subscribe or pay for the magazine, that the appellant was nevertheless bound by the terms of his contract with appellee to send each issue of his magazine to every member whose name was on the subscription list furnished him by appellee. In other words, the subscription list between the parties to the contracts was the list of names furnished appellant by appellee. The members of the club were not individually liable to the appellant as subscribers, and there was no intention to so make them. Under the terms of the modifying contract the appellee bound itself to send out bills, and, if any amounts were collected thereon, to pay same to appellant. At the time no bills had been sent for the magazine to any of its members, and none had elected to subscribe thereto. It would therefore seem that the fair and reasonable construction of the contracts is that the appellee agreed to send bills to its members on the subscription list, that is, the only subscription list existing at the time, and which, as between the parties to the contracts, was the list of the members furnished to appellant by the appellee. It also appears that this was the construction of the contract by the parties, at least until suit was begun.

The appellant testified that he repeatedly requested Mr. Thompson, the President of the Club, to send out the subscription charges to the members as agreed, and Mr. Thompson said to him, "He would take care of it and see that the matter was taken up properly over at the Club and statements sent; he wanted to see me get my money." Under date of January 7, 1908, Mr. Moulton, the chairman of the appellee's Finance Committee, wrote Mr. Stevenson, another member of the Finance Committee, enclosing a letter from appellant in regard to these subscription accounts, and said in part: "Will you please turn this" (Mr. Hemmer's letter) "over to Mr. Goodbody with instructions to open a special account to be known as 'Subscription Account' on the Club books. I should like to see that the Club carries out this contract with Mr. Hemmer." The testimony of Mr. Lytton, appellee's vice-president, also tends to prove such was the construction of the contract by the parties. But the said subscription accounts were never sent by appellee to any of its members.

We may observe that we think the court properly excluded the evidence as to the custom in other clubs; also the evidence on the measure of damages of the amount collected by the Club for subscriptions for a magazine published and sent to its members by the appellee. Whether such evidence might be proper as data to be considered by the jury in fixing the damages, would depend upon the foundation laid therefor; but as to whether such foundation might be laid to make the said evidence competent, we can, of course, express no opinion.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*